UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | x | |
| TAMARINDART, LLC, | : | |
| Plaintiff, | : | CIVIL ACTION NO. 1:22-cv-595 |
| | : | |
| - against - | : | |
| | : | |
| RAISA HUSAIN AND OWAIS HUSAIN AS | : | |
| ADMINISTRATORS OF THE ESTATE OF | : | |
| MAQBOOL FIDA HUSAIN, | : | |
| Defendant. | : | |
| | x | |

### ANSWER AND COUNTERCLAIM OF DEFENDANTS RAISA HUSAIN AND OWAIS HUSAIN AS ADMINISTRATORS OF THE ESTATE OF MAQBOOL FIDA HUSAIN

Defendants Raisa Husain and Owais Husain as Administrators of the Estate of Maqbool Fida Husain (the "Estate"), by and through their undersigned counsel, hereby file their Answer and Affirmative Defenses to Plaintiff TamarindArt, LLC's ("Plaintiff" or "Tamarind") Complaint using the same headings and paragraph numbers employed by Tamarind and assert their own Counterclaim against Tamarind.

### THE NATURE OF THE ACTION[1]

1.       The Estate admits that this purports to be a civil action for a declaratory judgment of, among other things, non-infringement of certain copyright rights owned by the Estate arising under the Copyright Act, 17 U.S.C. § 101 et seq. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, but denies that Plaintiff is entitled to any relief in this action.

2.       The Estate admits that in 2002, Plaintiff bought a painting called "Lightning" ("Artwork") by an artist named Maqbool Fida Husain ("MFH") (who is deceased) for $400,000

---

[1] The Estate repeats the headings from Plaintiff's Complaint herein for ease of reference. To the extent any of the headings contain factual allegations, the Estate denies those allegations.

and respectfully refers this Court to the agreement between Plaintiff and MFH, attached to Plaintiff's complaint as Exhibit A, which speaks for itself.  Except as so admitted or referred, the Estate denies each and every allegation in Paragraph 2 of the Complaint.

3.      The Estate admits upon information and belief that Tamarind has launched a campaign to sell non-fungible tokens ("NFTs" and "NFT Project") based on the Artwork.  The Estate further denies each and every remaining allegation in Paragraph 3 of the Complaint.

4.      The Estate admits to sending Plaintiff a letter on January 8, 2022 demanding that Plaintiff cease and desist from violating the Estate's rights, and respectfully refers the Court to this letter for its content and meaning.  Except as so admitted and referred, the Estate denies each and every allegation in Paragraph 4 of the Complaint.

## THE PARTIES

5.      The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 5 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 5 and demands strict proof of Plaintiff's citizenship.

6.      The Estate admits that Defendant Raisa Husain ("RH") is an executor of the M.F. Husain Estate.  The Estate further admits that RH is a United States citizen residing in Mumbai, India.

7.      The Estate admits that Defendant Owais Husain ("OH") is an executor of the M.F. Husain Estate.  The Estate further admits that OH is a citizen of India, currently residing in Dubai, United Arab Emirates.

## JURISDICTION AND VENUE

8.      Paragraph 8 of the Complaint contains legal conclusions that require no response. To the extent a response is required, the Estate does not—at this time and for purposes of this case

only—contest that this Court has subject matter jurisdiction to hear this action.

9.      Paragraph 9 of the Complaint contains legal conclusions that require no response. To the extent a response is required, the Estate does not—at this time and for purposes of this case only—contest that this Court has subject matter jurisdiction to hear this action.  Except as so admitted and referred, the Estate denies each and every allegation in Paragraph 9 of the Complaint.

10.     Paragraph 10 of the Complaint contains legal conclusions that require no response. To the extent a response is required, the Estate does not—at this time and for purposes of this case only—contest that this Court has personal jurisdiction over it. Except as so admitted and referred, the Estate denies each and every allegation in Paragraph 10 of the Complaint.

11.     Paragraph 11 of the Complaint contains legal conclusions that require no response. To the extent a response is required, the Estate does not—at this time and for purposes of this case only—contest that this Court has supplemental jurisdiction over Plaintiff's purported claims under New York state law. Except as so admitted and referred, the Estate denies each and every allegation in Paragraph 11 of the Complaint.

12.     Paragraph 12 of the Complaint contains legal conclusions that require no response. To the extent a response is required, the Estate does not—at this time and for purposes of this case only—contest that venue is proper in the Southern District of New York.

## FACTUAL BACKGROUND

### A.  Background on MFH and Tamarind

13.     Admitted.

14.     The Estate admits that in 1975, MFH painted "Lightning."  The Estate lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 14 of the Complaint, and on that basis, the Estate denies the remaining allegations in

Paragraph 14.

15.     Admitted.

16.     The Estate denies that the Artwork was often called the "Guernica" of India.  The Estate lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 16 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 16.

17.     The Estate admits that MFH at times visited the Tamarind Gallery while in New York, New York.  The Estate lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 17 of the Complaint, and on that basis, the Estate denies the remaining allegations in Paragraph 17.

18.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 18 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 18.

**B.  Tamarind's Acquisition of Lightning**

19.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 19 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 19.

20.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 20 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 20.

21.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 21 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 21.

22.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 22 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 22.

23.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 23 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 23.

24.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 24 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 24.

25.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 25 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 25.

26.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 26 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 26.

27.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 27 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 27.

28.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 28 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 28.

29.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 29 of the Complaint, and on that basis, the Estate denies each and

every allegation in Paragraph 29.

30.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 30 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 30.

31.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 31 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 31.

32.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 32 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 32.

33.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 33 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 33.

34.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 34 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 34.

35.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 35 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 35.

36.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 36 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 36.

37.     The Estate lacks information sufficient to form a belief as to the truth or falsity of

the allegations in Paragraph 37 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 37.

38.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 38 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 38.

39.     The Estate admits upon information and belief that on December 1, 2002, MFH and Mr. Charugundla, on behalf of Tamarind, signed the Agreement and Bill of Sale attached as Exhibit A to the Complaint.[2]

40.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 40 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 40.

**C.  The Terms of the Bill of Sale**

41.     The Estate respectfully refers this Court to the December 1, 2002 Agreement and Bill of Sale between Plaintiff and MFH, attached to Plaintiff's complaint as Exhibit A, which speaks for itself, but except as so referred, denies each and every allegation in Paragraph 41 of the Complaint.

42.     The Estate admits upon information and belief that the December 1, 2002 Agreement and Bill of Sale was between Tamarind and MFH, but respectfully refers this Court to the Agreement, attached to Plaintiff's Complaint as Exhibit A, which speaks for itself.  Except as so admitted and referred, the Estate denies each and every allegation in Paragraph 42 of the Complaint.

43.     The Estate respectfully refers this Court to the December 1, 2002 Agreement and

---

[2] The Estate assumes, for purposes of this Answer, that Exhibit A to the Complaint is a true and correct copy of the 2002 Agreement.

Bill of Sale between Plaintiff and MFH, attached to Plaintiff's Complaint as Exhibit A, which speaks for itself, but except as so referred, denies each and every allegation in Paragraph 43 of the Complaint.

44.     The Estate respectfully refers this Court to the December 1, 2002 Agreement and Bill of Sale between Plaintiff and MFH, attached to Plaintiff's Complaint as Exhibit A, which speaks for itself, but except as so referred, denies each and every allegation in Paragraph 44 of the Complaint.

45.     The Estate respectfully refers this Court to the December 1, 2002 Agreement and Bill of Sale between Plaintiff and MFH, attached to Plaintiff's Complaint as Exhibit A, which speaks for itself, but except as so referred, denies each and every allegation in Paragraph 45 of the Complaint.

46.     The Estate respectfully refers this Court to the December 1, 2002 Agreement and Bill of Sale between Plaintiff and MFH, attached to Plaintiff's Complaint as Exhibit A, which speaks for itself, but except as so referred, denies each and every allegation in Paragraph 46 of the Complaint.

47.     The Estate respectfully refers this Court to the December 1, 2002 Agreement and Bill of Sale between Plaintiff and MFH, attached to Plaintiff's Complaint as Exhibit A, which speaks for itself, but except as so referred, denies each and every allegation in Paragraph 47 of the Complaint.

48.     The Estate admits that the December 1, 2002 Agreement and Bill of Sale specified an agreed-upon purchase price of $400,000 for the Artwork.  Except as so admitted, the Estate lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 48 of the Complaint, and on that basis, the Estate denies each and every allegation in

Paragraph 48.

49.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 49 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 49.

**D.  The 2003 Agreement**

50.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 50 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 50.

51.     The Estate admits upon information and belief that on April 11, 2003, MFH and Tamarind executed another agreement.[3]  The Estate lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 51 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 51.

52.     The Estate respectfully refers this Court to the April 11, 2003 Agreement between Plaintiff and MFH, which speaks for itself, but except as so referred, denies each and every allegation in Paragraph 52 of the Complaint.

53.     The Estate respectfully refers this Court to the April 11, 2003 Agreement between Plaintiff and MFH, which speaks for itself, but except as so referred, denies each and every allegation in Paragraph 53 of the Complaint.

54.     The Estate respectfully refers this Court to the April 11, 2003 Agreement between Plaintiff and MFH, which speaks for itself, but except as so referred, denies each and every allegation in Paragraph 54 of the Complaint.

55.     The Estate respectfully refers this Court to the April 11, 2003 Agreement between

---

[3] The Estate assumes, for purposes of this Answer, that the document produced by Tamarind on March 16, 2022 at TMD000007-TMD000009 as part of its initial disclosures is a true and correct copy of the 2003 Agreement.

Plaintiff and MFH, which speaks for itself, but except as so referred, denies each and every allegation in Paragraph 55 of the Complaint.

56.     The Estate respectfully refers this Court to the April 11, 2003 Agreement between Plaintiff and MFH, which speaks for itself, but except as so referred, denies each and every allegation in Paragraph 56 of the Complaint.

**E.  MFH Visited New York Often, Never Objecting to Tamarind's Uses and Reproductions of the Artwork**

57.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 57 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 57.

58.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 58 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 58.

59.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 59 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 59.

60.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 60 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 60.

61.     The Estate admits that MFH at times visited New York City and on some of those occasions visited Tamarind Gallery.  The Estate lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 61 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 61.

62.     The Estate lacks information sufficient to form a belief as to the truth or falsity of

the allegations in Paragraph 62 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 62.

63.    The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 63 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 63.

64.    The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 64 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 64.

65.    The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 65 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 65.

66.    The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 66 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 66.

67.    The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 67 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 67.

68.    The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 68 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 68.

69.    The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 69 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 69.

70.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 70 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 70.

71.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 71 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 71.

72.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 72 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 72.

73.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 73 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 73.

74.     The Estate denies that MFH was "very fond" of Mr. Charugundla.  The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 74 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 74.

75.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 75 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 75.

76.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 76 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 76.

77.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 77 of the Complaint, and on that basis, the Estate denies each and

every allegation in Paragraph 77.

78.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 78 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 78.

79.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 79 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 79.

80.     The Estate admits that RH at times visited New York with MFH, and that on some of those occasions MFH visited the Tamarind Gallery.  The Estate lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 80 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 80.

81.     Admitted.

82.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 82 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 82.

83.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 83 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 83.

84.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 84 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 84.

85.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 85 of the Complaint, and on that basis, the Estate denies each and

every allegation in Paragraph 85.

86.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 86 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 86.

### F.  The Lightning NFT Project

87.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 87 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 87.

88.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 66 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 66.

89.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 89 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 89.

90.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 90 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 90.

91.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 91 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 91.

92.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 92 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 92.

93.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 93 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 93.

94.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 94 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 94.

95.     The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 95 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 95.

## G. The January 8, 2022 Cease and Desist Letter and Existence of an Actual Controversy

96.     The Estate admits that it sent a cease-and-desist letter to Mr. Charugundla on January 8, 2022.

97.     The Estate respectfully refers the Court to its cease-and-desist letter, which speaks for itself.  Except as so referred, the Estate denies each and every allegation in Paragraph 97 of the Complaint.

98.     The Estate respectfully refers the Court to its cease-and-desist letter, which speaks for itself.  Except as so referred, the Estate denies each and every allegation in Paragraph 98 of the Complaint.

99.     The Estate respectfully refers the Court to its cease-and-desist letter, which speaks for itself.  Except as so referred, the Estate denies each and every allegation in Paragraph 99 of the Complaint.

100.     The Estate respectfully refers the Court to its cease-and-desist letter, which speaks for itself.  Except as so referred, the Estate denies each and every allegation in Paragraph 100 of

the Complaint.

101.    Paragraph 101 of the Complaint contains legal conclusions that require no response. To the extent a response is required, the Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 101 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 101.

**FIRST COUNT**
(Declaratory Judgment – Non-Infringement)

102.    The Estate repeats and re-alleges its answers to Paragraphs 1 through 101 of the Complaint as if fully set forth herein.

103.    Paragraph 103 of the Complaint contains legal conclusions that require no response.

104.    Paragraph 104 of the Complaint contains legal conclusions that require no response.

105.    Paragraph 105 of the Complaint contains legal conclusions that require no response. To the extent a response is required, the Estate respectfully refers this Court to the December 1, 2002 Agreement and Bill of Sale between Plaintiff and MFH, attached to Plaintiff's Complaint as Exhibit A, which speaks for itself, but except as so referred, denies each and every allegation in Paragraph 105 of the Complaint.

106.    The Estate respectfully refers this Court to the April 11, 2003 Agreement between Plaintiff and MFH, which speaks for itself, but except as so referred, denies each and every allegation in Paragraph 106 of the Complaint.

107.    Paragraph 107 of the Complaint contains legal conclusions that require no response. To the extent a response is required, the Estate respectfully refers this Court to the April 11, 2003 Agreement between Plaintiff and MFH, which speaks for itself, but except as so referred, denies each and every allegation in Paragraph 107 of the Complaint.

108.    Paragraph 108 of the Complaint contains legal conclusions that require no response.

To the extent a response is required, the Estate denies each and every allegation in Paragraph 108 of the Complaint.

109.    The Estate lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 109 of the Complaint, and on that basis, the Estate denies each and every allegation in Paragraph 109.

110.    Paragraph 110 of the Complaint contains legal conclusions that require no response. To the extent a response is required, the Estate denies each and every allegation in Paragraph 110 of the Complaint.

111.    Paragraph 111 of the Complaint contains legal conclusions that require no response. To the extent a response is required, the Estate denies that Tamarind is entitled to any relief.

112.    Paragraph 112 of the Complaint contains legal conclusions that require no response. To the extent a response is required, the Estate denies that Tamarind is entitled to any relief.

113.    Paragraph 113 of the Complaint contains legal conclusions that require no response. To the extent a response is required, the Estate denies that Tamarind is entitled to any relief.

## SECOND COUNT
### (Declaratory Judgment – Ownership)

114.    The Estate repeats and re-alleges its answers to Paragraphs 1 through 113 of the Complaint as if fully set forth herein.

115.    Paragraph 115 of the Complaint contains legal conclusions that require no response. To the extent a response is required, the Estate denies that Tamarind is entitled to any relief.

116.    The Estate respectfully refers this Court to the April 11, 2003 Agreement between Plaintiff and MFH, which speaks for itself, but except as so referred, denies each and every allegation in Paragraph 116 of the Complaint.

117.    The Estate respectfully refers this Court to the April 11, 2003 Agreement between

Plaintiff and MFH, which speaks for itself, but except as so referred, denies each and every allegation in Paragraph 117 of the Complaint.

118.    Paragraph 118 of the Complaint contains legal conclusions that require no response. To the extent a response is required, the Estate denies each and every allegation in Paragraph 118 of the Complaint.

119.    The Estate respectfully refers the Court to its cease-and-desist letter, which speaks for itself.  Except as so referred, the Estate denies each and every allegation in Paragraph 119 of the Complaint.

120.    Paragraph 120 of the Complaint contains legal conclusions that require no response. To the extent a response is required, the Estate denies that Tamarind is entitled to any relief.

121.    Paragraph 121 of the Complaint contains legal conclusions that require no response. To the extent a response is required, the Estate denies that Tamarind is entitled to any relief.

122.    Paragraph 122 of the Complaint contains legal conclusions that require no response. To the extent a response is required, the Estate denies that Tamarind is entitled to any relief.

123.    Paragraph 123 of the Complaint contains legal conclusions that require no response. To the extent a response is required, the Estate denies that Tamarind is entitled to any relief.

124.    Paragraph 124 of the Complaint contains legal conclusions that require no response. To the extent a response is required, the Estate denies that Tamarind is entitled to any relief.

### THIRD COUNT
(Breach of the Implied Covenant of Good Faith and Fair Dealing)

125.    The Estate repeats and re-alleges its answers to Paragraphs 1 through 124 of the Complaint as if fully set forth herein.

126.    Paragraph 126 of the Complaint contains legal conclusions that require no response. To the extent a response is required, the Estate respectfully refers this Court to the December 1,

2002 Agreement and Bill of Sale between Plaintiff and MFH, attached to Plaintiff's Complaint as Exhibit A, and the April 11, 2003 Agreement between Plaintiff and MFH, which speak for themselves.

127.    Paragraph 127 of the Complaint contains legal conclusions that require no response. To the extent a response is required, the Estate respectfully refers this Court to the December 1, 2002 Agreement and Bill of Sale between Plaintiff and MFH, attached to Plaintiff's Complaint as Exhibit A, and the April 11, 2003 Agreement between Plaintiff and MFH, which speak for themselves.  Except as so referred, the Estate denies each and every allegation in Paragraph 127 of the Complaint.

128.    Paragraph 128 of the Complaint contains legal conclusions that require no response. To the extent a response is required, the Estate respectfully refers this Court to the December 1, 2002 Agreement and Bill of Sale between Plaintiff and MFH, attached to Plaintiff's Complaint as Exhibit A, and the April 11, 2003 Agreement between Plaintiff and MFH, which speak for themselves.  Except as so referred, the Estate denies each and every allegation in Paragraph 128 of the Complaint.

129.    Paragraph 129 of the Complaint contains legal conclusions that require no response. To the extent a response is required, the Estate denies that Tamarind is entitled to any relief.

130.    Paragraph 130 of the Complaint contains legal conclusions that require no response. To the extent a response is required, the Estate denies that Tamarind is entitled to any relief and otherwise lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 130 of the Complaint, and on that basis, the Estate denies the allegations.

## **PRAYER FOR RELIEF**

With respect to the WHEREFORE clauses in the Complaint (Paragraphs a through e), the

Estate denies that Tamarind is entitled to any relief.

## GENERAL DENIAL

Each numbered paragraph in this Answer responds to the identically numbered paragraph in the Complaint. The Estate denies all allegations, declarations, claims, or assertions in the Complaint that are not specifically admitted in this Answer. To the extent the headings contained in the Complaint constitute allegations, such allegations are denied.

## AFFIRMATIVE DEFENSES

Further responding to the Complaint, the Estate asserts the following defenses. The Estate does not admit to having the burden of proof and/or the burden of persuasion with respect to any of these defenses. By designating the following as defenses, the Estate does not in any way waive or limit any defenses that are or may be raised by their denials, allegations, and averments set forth herein. These defenses are pleaded in the alternative, are raised to preserve the Estate's right to assert such defenses, and are raised without prejudice to the Estate's ability to raise other and further defenses. The Estate reserves the right to amend, supplement, and/or otherwise modify this Answer, including without limitation the right to assert additional affirmative defenses as they become apparent or available to the Estate through discovery or otherwise:

## FIRST DEFENSE

Plaintiff's claims are barred, in whole or in part, because they fail to state a claim upon which relief can be granted.

## SECOND DEFENSE

Plaintiff's claims are barred, in whole or in part, because this action does not involve an "actual controversy" under 28 U.S.C. § 2201.

## THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff is not entitled to the declaratory relief, damages, or other relief sought.

## FOURTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to mitigate its alleged damages.

## FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff does not own valid and/or enforceable copyrights in the Artwork.

## SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff has infringed the Estate's copyrights in the Artwork.

## SEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because the Estate has not waived or abandoned its copyrights in the Artwork.

## EIGHTH DEFENSE

Plaintiff's claims are barred, in whole or in part, under Sections 19(5) and 30A of the Indian Copyright Act, 1957, which mandate that where an agreement does not state the period of assignment or license, the period of assignment or license is deemed to be five years from the date of assignment or license.  Because the alleged December 1, 2002 Agreement at issue did not specify a period of assignment or license, any alleged assignment or license to Plaintiff of any copyrights in the Artwork expired and reverted to the Estate on December 1, 2007.

## NINTH DEFENSE

Plaintiff's claims are barred, in whole or in part, under Section 19(4) of the Indian Copyright Act, which requires an assignee or licensor to exercise the rights assigned or licensed within a period of one year from the date of assignment or license, otherwise, that assignment or license is deemed to have lapsed at the end of that one-year period, unless otherwise specified. Because the alleged December 1, 2002 Agreement at issue does not specify otherwise, and because Plaintiff failed to exercise (in whole or in part) the assigned or licensed copyrights in relation to the Artwork within one year from the date of that agreement, any alleged assignment or license of any copyrights in the Artwork in favor of Plaintiff lapsed and reverted to the Estate on December 1, 2003.

## TENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, under the second proviso to Section 18 of the Indian Copyright Act, which bars the application of any assignment to "any medium or mode of exploitation of the work which did not exist or was not in commercial use at the time when the assignment was made," unless such medium or mode of exploitation was specifically referred to in the assignment.  Because the alleged December 1, 2002 Agreement at issue did not specifically refer to the digital mediums or modes of exploitation at issue in this case, and because those digital mediums or modes neither existed nor were in commercial use at the time of that agreement, the 2002 Agreement never conveyed any copyrights related to the digital modes or mediums Plaintiff is seeking to exploit through the NFT Project.  Even otherwise, Plaintiff's claims are also barred, in whole or in part, under Indian contract law, as there could not have been any consensus ad idem as to any rights claimed to have been assigned with respect to any digital mediums or modes of exploitation which did not exist at the time of execution of

the 2002 Agreement.

## ELEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because they imply obligations that would be inconsistent with other terms of the alleged contractual relationships at issue.

## TWELFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because the Estate has not acted in a manner that would deprive of Plaintiff of the right to receive the benefits of any alleged agreement.

## THIRTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because they do not allege facts that the Estate acted in bad faith.

## FOURTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff has unclean hands.

## FIFTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel and waiver.

## COUNTER-CLAIM OF DEFENDANTS RAISA HUSAIN AND OWAIS HUSAIN AS ADMINISTRATORS OF THE ESTATE OF MAQBOOL FIDA HUSAIN

1.      Defendants and Counterclaim Plaintiffs Raisa Husain and Owais Husain as Administrators of the Estate of Maqbool Fida Husain (the "Estate") reallege and incorporate by reference their responses to Paragraphs 1 through 130 of the Complaint.

2.      The Estate asserts this civil action seeking permanent injunctive relief and actual damages for copyright infringement arising under the U.S. Copyright Act of 1976 (17 U.S.C. § 101 et seq.), based on Plaintiff TamarindArt, LLC's ("Plaintiff" or "Tamarind") willful and

unauthorized use, reproduction, publication, and distribution of a painting called "Lightning" ("Artwork") via its announced intention to sell non-fungible tokens ("NFTs") of the Artwork (the "NFT Project").

3.      Upon information and belief, Tamarind purchased the Artwork from the now-deceased artist Maqbool Fida Husain ("MFH") on December 1, 2002, for $400,000 through an Agreement and Bill of Sale (the "2002 Agreement").

4.      The 2002 Agreement is governed by Indian law, as it was partially negotiated and executed in India; signed by Tamarind and MFH while both contracting parties were located in India; concerned the Artwork that was created in India and located in India at the time of execution and performance; involved a party (MFH) domiciled in India at the time of execution and performance; witnessed by parties located in India; and performed in India.

5.      Under the Indian Copyright Act, 1957, the 2002 Agreement never conveyed any copyrights related to the modes or mediums Tamarind is seeking to exploit through the NFT Project, *or* in the alternative, any copyright rights related to the Artwork which were allegedly licensed or assigned to Tamarind have lapsed, expired and/or reverted to the Estate.

6.      Upon information and belief, Tamarind and MFH executed another agreement on April 11, 2003 (the "2003 Agreement") that purportedly assigned intellectual property rights to Tamarind for *future* artworks created by MFH for Tamarind.  The 2003 Agreement indicates the parties' intent to form a *new* relationship between Tamarind and MFH for the commissioning of future works created on or after the signing of the 2003 Agreement.  It does not apply to the Artwork, which was painted long before the 2003 Agreement; cure the 2002 Agreement's failure to grant rights in the Artwork to Tamarind; or revive any purported license or assignment of rights in the Artwork to Tamarind under the 2002 Agreement.

7.      Accordingly, the Estate is the valid owner of all intellectual property rights in the Artwork.

8.      Upon information and belief, in December 2021, Tamarind launched, marketed, and opened pre-sales for its NFT Project, which violates the Estate's copyrights in the Artwork.

## PARTIES

9.      Plaintiff and Counterclaim Defendant Tamarind alleges that it is a limited liability company organized under the laws of the State of New York with a principal place of business at 142 East 39th Street, New York, New York, 10016 ("Tamarind Gallery").   Plaintiff and Counterclaim Defendant Tamarind further alleges that Kent Charugundla ("Mr. Charugundla") is the sole member of Tamarind and is a citizen of New York.

10.      Defendant and Counterclaim Plaintiff Raisa Husain ("RH") is an executor of the Estate of MFH.  RH is a United States citizen residing in Mumbai, India.

11.      Defendant and Counterclaim Plaintiff Owais Husain ("OH") is an executor of the Estate of MFH.  OH is a citizen of India residing in Dubai, United Arab Emirates.

## JURISDICTION AND VENUE

12.      This is a civil action arising from Tamarind's violation of the copyright laws of the United States (17 U.S.C. § 101 et seq.).  Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

13.      This Court also has subject matter jurisdiction to hear this action under 28 U.S.C. § 1332, because Tamarind does not share a state of citizenship with any Defendant, and because the amount in controversy exceeds $75,000.00 exclusive of interests and costs either as a result of damages suffered by the Estate or because of Tamarind's sustained profits as a result of its copyright infringement of the Artwork.

14.     This Court has personal jurisdiction over Tamarind because it is a limited liability company organized under the laws of the State of New York with a principal place of business in New York, and because Tamarind has voluntarily submitted to jurisdiction in the Southern District of New York by filing its Complaint in this Court.

15.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

**FACTUAL ALLEGATIONS**

**A.  Background on MFH and Lightning**

16.     Known as the "Picasso of India," MFH was one of India's most celebrated artists prior to his passing on June 9, 2011 in London, England.

17.     For decades, MFH was a globally renowned artist, known for co-founding the Bombay Progressive Artists' Group and lauded for his cubist painterly style involving scenes from Indian history and mythology.

18.     In 1975, MFH painted a 60-foot-long mural in India later called "Lightning."

19.     The Artwork consists of twelve enormous panels, each featuring white horses galloping across the canvas and replete with visual references to India and the contemporary political moment in which it was painted.

20.     After the Artwork's public display in 1975, upon information and belief, in the 1980s, MFH lent the Artwork to a theater group in New Delhi, India, who wished to use the Artwork as a backdrop for one of their plays.

21.     Upon information and belief, the Artwork was exhibited in New Delhi, India in 1997, upon the fiftieth anniversary of India's independence.

22.     The Artwork never physically left India from its creation until its sale to Tamarind

in 2002.

**B.  MFH's Sale of the Artwork to Tamarind and the Terms of the 2002 Agreement under Indian Law**

23.     Upon information and belief, in 2002, Mr. Charugundla and MFH began negotiating over the sale of the Artwork.

24.     Upon information and belief, on November 27, 2002, Mr. Charugundla traveled to New Delhi, India, to negotiate further with MFH regarding the sale of the Artwork and to pick up the Artwork following the finalization of the proposed sale agreement.

25.     Upon information and belief, on December 1, 2002, Tamarind and MFH signed the 2002 Agreement, selling the Artwork and assigning certain associated intellectual property rights related to the Artwork to Tamarind for $400,000.[4]

26.     The 2002 Agreement was executed on Indian stamp paper by Tamarind and MFH while both contracting parties were located in India.

27.     At the time of the execution of the 2002 Agreement, MFH was a citizen of India living in India, and the address of his Indian domicile is included in the 2002 Agreement.

28.     The 2002 Agreement was witnessed by two individuals with Indian addresses.

29.     Upon information and belief, on December 1, 2002, the 2002 Agreement was performed in India.  MFH delivered the Artwork, which was located in India at the time of the execution of the 2002 Agreement, to Tamarind, while both parties were located in India.

30.     In the 2002 Agreement, MFH warranted that he had "full power and authority to enter into, and to perform his obligations under" the 2002 Agreement.

31.     In the 2002 Agreement, MFH "grant[ed] [to Tamarind] an exclusive, royalty free,

---

[4] The Estate assumes, for purposes of this Counterclaim, that Exhibit A to the Complaint is a true and correct copy of the 2002 Agreement.

worldwide license to display, market, reproduce and resell all or any part of the [A]rtwork, including all intellectual property in respect thereof."

32.     The 2002 Agreement did not specify any term or time period for the license, nor did it contain any choice-of-law provision.

33.     Because the 2002 Agreement was negotiated, executed, and performed in India; because it pertained to the Artwork created and located in India at the time of the 2002 Agreement; and because it was entered into by one party who was an Indian citizen domiciled in India, Indian law applies to the 2002 Agreement.

34.     Sections 19(5) and 30A of the Indian Copyright Act, 1957 mandate that where an agreement does not state the period of assignment or license, the period of assignment or license is deemed to be five years from the date of assignment or license.  Because the 2002 Agreement did not specify a period of assignment or license, any alleged assignment or license to Tamarind of any copyrights in the Artwork expired and reverted to the Estate on December 1, 2007.

35.     Section 19(4) of the Indian Copyright Act requires an assignee or licensor to exercise the rights assigned or licensed within a period of one year from the date of assignment or license, otherwise, that assignment or license is deemed to have lapsed at the end of that one-year period, unless otherwise specified.  Because the 2002 Agreement does not specify otherwise, and because Tamarind failed to exercise (in whole or in part) the assigned or licensed copyrights in relation to the Artwork within one year from the date of that agreement, any alleged assignment or license of any copyrights in the Artwork in favor of Tamarind lapsed and reverted to the Estate on December 1, 2003.

36.     The second proviso to Section 18 of the Indian Copyright Act bars the application of any assignment to "any medium or mode of exploitation of the work which did not exist or was

not in commercial use at the time when the assignment was made," unless such medium or mode of exploitation was specifically referred to in the assignment.  Because the alleged 2002 Agreement at issue did not specifically refer to the digital medium or mode of exploitation at issue in this case, and because those digital mediums or modes neither existed nor were in commercial use at the time of that agreement, it never conveyed any copyrights related to the digital modes or mediums Tamarind is seeking to exploit through the NFT Project.

37.     Indian contract law further bars Tamarind's claims, as there could not have been any consensus ad idem as to any rights claimed to have been assigned with respect to any digital mediums or modes of exploitation which did not exist at the time of execution of the 2002 Agreement.

**C.  The 2003 Agreement**

38.     Upon information and belief, on April 11, 2003, MFH and Tamarind executed another agreement (the "2003 Agreement").[5]

39.     The specified purpose of the 2003 Agreement was for "Tamarind and Artist [MFH]" to "enter into a relationship to utilize Artist services to sketch, design, paint, create logos, signs, invitation cards, furniture, and work on any required or requested medium of art for [] Tamarind or its affiliates."

40.     The 2003 Agreement specified that MFH "agree/s that all artworks already purchased or created for Tamarind/affiliates are considered copyright protected property of Tamarind" but did not reference the 2002 Agreement, or specify or extend the term of the license granted in the 2002 Agreement, in any way.

41.     The 2003 Agreement in no way affected or altered the five-year period of the

---

[5] The Estate assumes, for purposes of this Answer, that the document produced by Tamarind on March 16, 2022 at TMD000007-TMD000009 as part of its initial disclosures is a true and correct copy of the 2003 Agreement.

license granted in the 2002 Agreement under Indian copyright law.

42.     The 2003 Agreement also provided that MFH "*hereafter* shall have no rights on/in the images or works, artworks, created for, and or those purchased by Tamarind/affiliates and those created at the premises of Tamarind" and that MFH agreed to "assign" all intellectual property rights for all "art works, designs, sketches, paintings, interviews, photographs, film, prints, etc., done on [Tamarind] premises" (emphasis added).

43.     The 2003 Agreement provided that the agreement "shall be governed by and construed in accordance with the laws [of] the State of New York[.]"

**D.  The Transfer of MFH's Intellectual Property Rights to the Estate**

44.     On November 15, 2009, MFH executed his last will and testament ("Will") before the Consulate General of India in Dubai.

45.     The Will stated that MFH's "intention is that each of [MFH's] six children should inherit an equal share in my property" and "bequeath[ed] all [MFH's] property moveable and immovable" to his six children in "equal shares."  The Will stated that all of MFH's property "shall be held by M.F. Husain Foundation, a Family Trust constituted under a Deed of Trust dated today [November 15, 2009], of which the Settlor was [MFH], and of which the beneficiaries are [MFH's] six children, and of which the Trustees are [MFH's] daughter Raisa Husain and [MFH's] son Owais Husain, in the first instance."

46.     The Will stated that the "Trust shall look after and preserve [MFH's] paintings and other assets, and shall sell them or deal with and dispose of them in any manner[.]"  The Will also stated that the Executors and/or Trustees "shall have the right to decide all issues which may arise, and any such decision of the Executors and/or Trustees shall be final and binding."

47.     The Will appointed RH and OH as executors and trustees of the Will.

48.     The Will was duly witnessed, and each of MFH's six living adult children signed the Will in representation of their agreement to the terms and conditions of the will.

49.     The deed of trust ("Deed") for the M.F. Husain Foundation specified that MFH "proposes to gift or bequeath paintings, works o[f] art and funds and assets" to the trust, "so that the same may be preserved and from time to time sold or otherwise utilised[.]"   The Deed also stated that RH and OH are trustees of the trust.

50.     The Deed states that, among others, RH and OH have the power and authority to "look after, preserve, exhibit, distribute, sell and otherwise deal with or dispose of paintings and works of art" and "to purchase, take on lease, leave and licence basis, co-operative schemes or any other arrangements or otherwise acquire any movable or immovable property which is considered necessary or useful for the purposes of preserving the assets of the Trust or for any other objects of the Trust[.]"

51.     On June 9, 2011, MFH died in London, England.

52.     On June 16, 2011, MFH's six living adult children executed an agreement ("Sibling Agreement") designating OH and RH, jointly and severally, as executors and trustees of MFH's will, and authorizing OH and RH to represent the Estate of MFH "in all matters."

53.     The Sibling Agreement, among others, further authorized OH and RH to "collect all the assets, works of Art and other belongings of [MFH] and properly look after the same."

54.     On August 8, 2011, the Dubai Court of First Instance–Personal Status Court named MFH's six living adult children, including OH and RH, as MFH's legal heirs.

55.     The Estate is the valid owner of all intellectual property rights previously owned by MFH prior to his death, including all copyrights related to the Artwork.

56.     The Estate seeks to preserve and guard the legacy of MFH and his artistic works,

as well as expand MFH's reach in the future to new mediums and audiences.

57.     With that goal in mind, the Estate recently announced the upcoming launch of its own NFTs of MFH's artworks through its exclusive partnership with the online platform "Hefty Art."[6]

### E.  Tamarind's Infringing NFT Project

58.     Upon information and belief, on or about December 2021, Tamarind announced the upcoming sale of the "LightningNFT" on the Ethereum blockchain.

59.     Tamarind has launched a website for the "LightningNFT," available at https://lightningnft.io.  The following image is a screenshot from the home page of that website.



60.     Tamarind described "LightningNFT" as the "digitized form of the most well-known, widely published painting of the celebrated Indian-Qatari master, Maqbool Fida Husain."

61.     Tamarind announced that "Lightning artwork has *never been offered as a print or a digital artwork*. This is the first time that such an iconic work is being offered as an NFT."

---

[6] Hefty Art, "M.F. Husain NFT Launch With HEFTY ART," YouTube (Jan. 30, 2022), https://www.youtube.com/watch?v=QVua4WX6YsQ; *see also* "Hefty Art Brings MF Husain's Paintings to Metaverse; Exclusive Partner for NFTs," Bitcoin.com News (Feb. 2, 2022), https://news.bitcoin.com/hefty-art-brings-mf-husains-paintings-to-metaverse-exclusive-partner-for-nfts/.

62.     Tamarind stated that the "LightningNFT" will be a "digital drop of (TBD) NFTs with 62 unique traits." Each NFT "represents one of the painting's 12 panels with its own trait."

63.     Collectors are "invited to attempt to form a straight flush – 12 panels each sharing a single trait, say a green mat with black frame, for example."  Collectors who form a "straight flush" will "have the option to exchange those 12 NFTs in for an extremely rare single NFT image which includes all 12 panels."

64.     Since December 2021, Tamarind launched at least two rounds of pre-sales of the NFT Project on its website, the second of which was launched after Tamarind filed this lawsuit.[7]

65.     Tamarind has extensively publicized and marketed the "LightningNFT" and its pre-sales on several social media platforms, including Discord,[8] Instagram,[9] Twitter,[10] YouTube,[11] and Telegram,[12] and has continued to do so after it filed this lawsuit.  Images from these sites follow:

**Discord:**



---

[7] *See, e.g.*, @Lightningnft_io, Twitter (Feb. 7, 2022),
https://twitter.com/Lightningnft_io/status/1490691155515817984 ("Join the second presale before spots are gone!");
@Lightningnft_io, Twitter (Feb. 2, 2022), https://twitter.com/Lightningnft_io/status/1489002184381550593 ("Don't
miss this one! First presale sold out so quickly!"); @Lightningnft_io, Twitter (Jan. 15, 2022),
https://twitter.com/Lightningnft_io/status/1482345948202389504 ("Join the presale list now before spots fill up!
The 1st round of Pre-Sale is closing at midnight . . .").
[8] "LightningNFT," Discord, https://discord.com/invite/lightningnft.
[9] "@lightningnft_io," Instagram, https://www.instagram.com/lightningnft_io/.
[10] @LightningNFT_io, Twitter, https://twitter.com/lightningnft_io.
[11] "Lightningnft," YouTube, https://www.youtube.com/channel/UC2dE8Bdk2Fzfrsv97ogpl9A; "LightningNFT,"
YouTube, https://www.youtube.com/channel/UCkoLOl4si21FnlolacsJwuA.
[12] "LightningNFT," Telegram, https://t.me/lightningnft.

**Instagram:**



**Twitter:**



**YouTube:**



**Telegram:**



**F.  The Estate's Cease-and-Desist Letter to Tamarind and This Action**

66.     On or about December 2021, the Estate became aware of Tamarind's NFT Project after Mr. Charugundla informed RH and OH's sibling via text message that he intended to proceed with the NFT Project.

67.     On January 8, 2022, the Estate sent Tamarind a cease-and-desist letter related to the Tamarind's NFT Project arising from the Artwork.

68.     In the cease-and-desist letter, the Estate informed Tamarind that it was the exclusive copyright owner of the Artwork and that it was not aware of any basis for Tamarind's asserted

right to proceed with the NFT Project.

69.     The Estate requested that Tamarind provide the Estate with documents on which it based any claim to the intellectual property rights in the Artwork, and until the matter was resolved, to cease and desist from "proceeding with the announced sale or any other transfer of the 'LightningNFT,' cease any marketing or advertising of the NFT . . . and suspend and/or cancel any pre-sales that have already occurred."

70.     On January 9, 2022, Tamarind sent the Estate a copy of the 2002 Agreement, but not the 2003 Agreement.[13]

71.     Shortly thereafter, the Estate communicated to Tamarind that under governing Indian copyright and contract law, the Estate is the valid owner of all copyrights in the Artwork. The Estate informed Tamarind that it would provide a letter to Tamarind summarizing their positions under Indian law.

72.     Without warning, and before the Estate could send Tamarind that letter, on January 21, 2022, Tamarind filed this lawsuit, seeking a declaratory judgment of ownership and non-infringement of the Estate's copyright rights, as well as a claim for breach of the implied covenant of good faith and fair dealing.

**FIRST COUNT**
(Copyright Infringement)

73.     The Estate hereby incorporates paragraphs 1 through 72 of this Counterclaim as if fully set forth herein.

74.     The Estate is the exclusive copyright owner of the Artwork.

75.     Tamarind, through its NFT Project, has infringed the Estate's exclusive rights as

---

[13] After commencing this litigation, Tamarind produced the 2003 Agreement on March 16, 2022, at TMD000007-TMD000009 as part of its initial disclosures.

the copyright owner of the Artwork by reproducing the Artwork, preparing derivative works based upon the Artwork, and distributing copies of the Artwork to the public by sale.

76.    All such reproductions, copies and derivative works are substantially and strikingly similar to the original Artwork.

77.    Tamarind has held and continues to hold itself out as the exclusive copyright owner of the Artwork and has launched the NFT Project on that basis.

78.    Tamarind knew or should have known that its unauthorized use of the Artwork infringed the Estate's exclusive rights under the Copyright Act or recklessly disregarded such possibility of unauthorized use.

79.    Tamarind's infringing acts have caused and continue to cause injury to the Estate to an extent as yet to be determined.

## PRAYER FOR RELIEF

WHEREFORE, the Estate prays for judgment as follows:

1.    Dismissing Tamarind's claims in all respects, with prejudice, and denying its requested relief in this action;

2.    Finding that Tamarind has infringed the Estate's exclusive rights in the Artwork under 17 U.S.C. § 106;

3.    Granting the Estate permanent injunctive relief enjoining Tamarind from further reproducing, modifying, preparing derivative works from, or engaging in other infringing uses of the Artwork, under 17 U.S.C. § 502;

4.    Granting the Estate actual damages and all profits earned by Tamarind attributable to infringement of the Artwork in accordance with proof and in an amount to be determined;

5.      Granting the Estate an award for their costs and disbursements of this action; and

6.      Granting such other and further relief as the Court may deem just and proper.


Dated: April 25, 2022                          Respectfully submitted,

                                               By: /s/ *James Rosenfeld*
                                               James Rosenfeld
                                               Meenakshi Krishnan (admitted *pro hac vice*)
                                               DAVIS WRIGHT TREMAINE LLP
                                               1251 Avenue of the Americas, 21st Floor
                                               New York, NY 10020-1104
                                               (212) 489-8230 Phone
                                               (212) 489-8340 Fax
                                               jamesrosenfeld@dwt.com
                                               meenakshikrishnan@dwt.com

                                               *Attorneys for Defendants and Counterclaim
                                               Plaintiffs Raisa Husain and Owais Husain as
                                               Administrators of the Estate of Maqbool Fida
                                               Husain*